# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **SARAH M. TANDY,** | **CV 14-165-BLG-CSO** |
| **Plaintiff,** | |
| | **ORDER** |
| **vs.** | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
| **Defendant.** | |

Plaintiff Sarah M. Tandy ("Tandy") seeks judicial review of Defendant Acting Commissioner of Social Security's ("Commissioner") decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c). *Cmplt. (ECF 2).*[1] On January 27, 2015, upon the parties' written consent, this matter was assigned to the undersigned for all proceedings. *Notice of Assignment (ECF 8).*

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.* Citations to pages are to those assigned by the ECF system.

On June 24, 2014, Tandy filed her opening brief. *Tandy's Br. (ECF 18)*. On August 24, 2015, the Commissioner filed her response brief. *Commissioner's Br. (ECF 23)*. And on September 23, 2015, Tandy filed her reply brief. *Tandy's Reply Br. (ECF 26)*. Having reviewed the Administrative Record ("AR")[2] and the parties' arguments, the Court reverses the Commissioner's decision and remands this case for an award of benefits.

## I.    PROCEDURAL BACKGROUND

On April 4, 2011, Tandy protectively filed applications for DIB and SSI claiming an onset-of-disability date of November 1, 2007. *AR 250-65*. She claims to be disabled based on limitations imposed by myofascial pain syndrome, mild right shoulder arthritis, fatigue, obstructive sleep apnea, attention deficit hyperactivity disorder ("ADHD"), depression, and anxiety. *ECF 2  at 1; AR 13*. The Social Security Administration ("SSA") denied her applications initially and upon reconsideration. *See AR 133-201*.

---

[2]In citing to the AR, the Court cites to page numbers as assigned in the AR and not by numbers as assigned by the Court's electronic filing system.

On June 6, 2013, an Administrative Law Judge ("ALJ") held a hearing, at which Tandy was present with an attorney representing her. *AR 40-132*. On June 28, 2013, the ALJ issued a written decision denying Tandy's claims for DIB and SSI. *AR 11-28*.

On October 30, 2014, the Appeals Council denied Tandy's request for review making the ALJ's decision final for purposes of judicial review. *AR 1-5*; 20 C.F.R. § 404.981 (2015). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. <u>STANDARD OF REVIEW</u>

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Garcia v. Commr. of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (citation omitted); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id*. (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in the testimony, and resolving ambiguities in the record. *Treichler v. Comm'n of Soc. Security*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.  **BURDEN OF PROOF**

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.   The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2.   If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3.   The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4.   If the claimant is still able to perform his or her past

relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5.  If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.   **THE ALJ's OPINION**

In his written decision, the ALJ followed the five-step sequential evaluation process in considering Tandy's claim for benefits. First, the

ALJ found that Tandy had not engaged in substantial gainful activity since her alleged onset-of-disability date of November 1, 2007. *AR 13*.

Second, the ALJ found that Tandy has the following severe impairments: "myofascial pain syndrome, mild right shoulder arthritis, fatigue, obstructive sleep apnea, Attention Deficit Hyperactivity Disorder (ADHD), depression, and anxiety." *Id*.

Third, the ALJ found that Tandy does not have an impairment or combination of impairments that meets or medically equals the severity of any one of the impairments in the Listing of Impairments. *AR 13-17*.

The ALJ next found that Tandy, during the relevant time frame, had the maximum residual functional capacity ("RFC") to:

> perform the full range of unskilled medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant has the ability to understand and remember very short simple instructions and remember standard locations and basic work-like procedures. Due to the claimant's anxiety, she is limited to simple, routine, and repetitive work. The claimant has the ability to maintain attention and concentration for extended periods of time, and is capable of performing simple, routine, repetitive work activities on a sustained basis. The claimant needs to working [sic] in a job where she would have limited contact with coworkers. The claimant can tolerate brief superficial contact with the general public and occasional contact with coworkers. The claimant's work should not involve working as part of a

team to perform the work. The claimant has the mental ability to make simple work-related decisions and has the ability to complete a normal workday and workweek without any interruption from her psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. The claimant has the ability to accept instructions and respond appropriately to criticisms and changes in work setting.

*AR 17.*

At the fourth step of the evaluation process, the ALJ found that Tandy is unable to perform her past relevant work as a hair stylist/cosmetologist, central appointment representative, telephone operator, and dental assistant. *AR 26.*

Fifth, the ALJ found that Tandy could perform jobs that exist in significant numbers in the national economy. He considered Tandy's age on her alleged onset date (30 years old, which is defined as a younger individual under the Social Security regulations), education (at least a high school education and is able to communicate in English), work experience, and RFC. *AR 26.* Relying on testimony from a vocational expert ("VE") who also considered the above factors, the ALJ concluded that Tandy could perform work in the following representative unskilled occupations:

1. packer/wrapper;
2. laundry dry cleaning worker;
3. janitor cleaner;
4. laundry folder;
5. food order clerk; and
6. parking till attendant

*AR 27.* Thus, the ALJ determined that Tandy was not disabled. *Id.*

## V. <u>SUMMARY OF PARTIES' ARGUMENTS</u>

Tandy argues that the ALJ both failed to support his decision

with substantial evidence and based his decision on legal error in the

following ways: (1) by improperly weighing the opinion of her treating

psychiatrist, Dr. Larry W. Amstutz, M.D. ("Dr. Amstutz"),[3] "who opined

she could not work[,]" *Tandy's Opening Br. (ECF 18) at 2, 3-7*; (2) by

improperly weighing the opinion of her treating physician, Dr. Glenn K.

Guzman, M.D. ("Dr. Guzman"), "who opined she has been unable to

work[,]" *id. at 2-3, 7-11*; (3) by failing to properly support his adverse

credibility finding respecting Tandy's pain and other symptoms, *id. at

3, 11-17*; (4) by failing to ask the medical expert who testified at the

hearing, Dr. Thomas Atkin, Psy.D. ("Dr. Atkin"), whether Tandy's

---

[3]The ALJ refers to Dr. Amstutz as "Dr. Arhstutz" throughout the
written decision.

impairments equaled any in the Listings, *id. at 3, 17-19*; (5) by using the "illegal 'sit and squirm' test" when assessing Tandy's physical and mental impairments, *id. at 3, 19-20*; (6) by failing to find, based on the evidence, that Tandy's activities of daily living are limited, *id. at 3, 20-21*; and (7) by failing to support with substantial evidence his findings respecting Tandy's RFC, *id. at 3, 21-23*.

The Commissioner, on the other hand, argues that: (1) the ALJ reasonably evaluated Tandy's credibility, properly considered her activities of daily living, and did not err respecting Tandy's allegation that he relied on the "sit and squirm test[,]" *Comm.'s Br. (ECF 23) at 3 n.1, 4-12;* (2) the ALJ reasonably weighed the opinions of treating physician Dr. Amstutz, *id. at 3, 12-17*; (3) the ALJ reasonably weighed the opinion of treating physician Dr. Guzman, *id. at 3, 17-19*; (4) the ALJ's determination at the third step in the sequential evaluation process was proper, including his consideration of Dr. Atkin's testimony, *id. at 3, 19-21*; and (5) the ALJ properly determined Tandy's RFC, *id. at 3, 21-23*.

## VI. DISCUSSION

The primary issues before the Court are whether substantial evidence supports the Commissioner's decision, and whether the Commissioner's decision is free of legal error. The Court is not permitted to re-weigh the evidence. For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court concludes that: (1) the Commissioner's decision is not based on substantial evidence in the record; (2) Dr. Amstutz's opinion is entitled to controlling weight; and (3) substantial evidence supports a conclusion that Tandy is disabled. Thus, the Court orders that the Commissioner's decision be reversed and that the matter be remanded for an award of benefits.

As an initial matter, although the parties raise multiple arguments summarized above, the Court finds dispositive the ALJ's improper rejection of the opinion of Tandy's treating psychiatrist, Dr. Amstutz. This error, coupled with substantial evidence of Tandy's inability to perform substantial gainful activity on a sustained basis, compels the conclusion that Tandy is disabled under the Act. In

reaching this conclusion, the Court finds it unnecessary to address the

parties' other arguments.

### A.   ALJ's Consideration of Dr. Amstutz's Opinion

Tandy points to specific evidence of record in arguing that the

ALJ erred in rejecting Dr. Amstutz's opinion.  *ECF 18 at 3-7.*  First, she

notes, Dr. Amstutz wrote in a letter dated June 9, 2009, in relevant

part, as follows:

> You have requested a letter briefly describing your care.
> You have been under my care over the last seven years.[4]
> Recently, due to the severe and chronic nature of your
> anxiety and depression, you have been unable to work
> regularly.  I am writing this letter in support of ongoing
> childcare support due to your impairment and disability
> from mental illness.
>
> *       *       *
>
> Hopefully this letter will provide support for ongoing
> childcare needs.

*AR 347.*

Second, Tandy notes that Dr. Amstutz, in a Mental Impairment

Questionnaire dated April 30, 2013, rated her abilities to perform most

---

[4]It appears from other evidence in the record that, at the time he
wrote this letter, Dr. Amstutz actually had been treating Tandy for
approximately 12 years.  *See AR 612.*

work activities as "unable to meet competitive standards." *AR 594-98.* And, Tandy notes that Dr. Amstutz rated limitations on her activities of daily living, and difficulties maintaining concentration, persistence, and pace, as "marked[,]" and her difficulties in maintaining social functioning as "extreme." *AR 597.* These findings concerning the degree of her limitations, Tandy argues, meet the Part B criteria for the Mental Impairment Listings at 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00. *ECF 18 at 3-4.*

Third, Tandy notes, Dr. Amstutz wrote another letter dated August 12, 2014 – which was after the ALJ's decision but while the case was pending with the Appeals Council – in which he stated, in relevant part, as follows:

> I have treated Ms. Tandy for about 17 years, since 1997. ... At that time, she was already dealing with significant difficulties related to anxiety, depression, and probable PTSD. ... When I saw her in March of '97, she was having significant anxiety symptoms with sweating, headaches, feelings of tension, panic, difficulty in crowds and large groups.
>
> I have treated her over the years and have watched her as she attempted to function in a number of different employment opportunities. She was trained as a cosmetologist and attempted for a period of time to run a

cosmetology chair which was not financially successful, by her report. She was employed at Target. She has cooperated with vocational rehab. She has attempted to work as I noted in a family run business which was unsuccessful.

We have tried multiple medications to attempt to stabilize her. They certainly give her some comfort but have not reduced her symptoms to the point that I would see her in any way capable of holding a regular and steady employment.

Complicating her situations are her physical symptoms as documented by Dr. Guzman. The physical symptoms and illness cannot be separated from her mental illness in terms of adding to her disability and difficulty functioning in a work setting.

It is my honest assessment that she would work if she were capable. I see no evidence of feigning or malingering or purposely attempting to avoid work. She certainly has followed through regularly on therapy. After 17 years, I am certainly empathetic with her illness and the impairment that it causes her. I would hope that I am also objective in this assessment as well.

*AR 612-13.*

Tandy argues that the ALJ did not support his rejection of Dr. Amstutz's opinion with specific and legitimate reasons supported by substantial evidence. *ECF 18 at 7.* The Court agrees.

A treating physician's opinion is entitled to greater weight than

that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion, in turn, "carries more weight than a reviewing physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "substantial evidence." *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).

An ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted)*; Reddick v. Chater*,

157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  Among the situations in which the ALJ must cite such specific and legitimate reasons is when a treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings or is based on the same information used by the treating physician. *Andrews*, 53 F.3d at 1041.  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes*, 881 F.2d at 751.

Also, as happened in this case with Dr. Amstutz's August 12, 2014 letter, if the "Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commr. of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (*quoting Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007) (internal quotations omitted) (alterations in original) and 20 C.F.R. § 404.1527(c)(2)).

Here, Dr. Amstutz's opinion was controverted by the opinions of non-examining state psychological consultants who reviewed Tandy's medical records. *AR 175-86.* His opinion also was controverted by Dr. Thomas Atkin, Ph.D. ("Dr. Atkin"), who did not examine or treat Tandy but did review Tandy's medical records and testified at her hearing as a medical expert. *AR 18, 98-118.* Because Dr. Amstutz's opinion was contradicted, to reject it the ALJ was required to provide "specific and legitimate reasons supported by substantial evidence in the record." *Molina*, 674 F.3d at 1111.

In rejecting Dr. Amstutz's opinions, the ALJ began by setting forth a summary of Dr. Amstutz's treatment notes concerning Tandy. *AR 18-21.* The ALJ acknowledged that Tandy's "medical record[s] show[ ] that [she] has a long history of mental problems." *AR 18.* He

also noted that Dr. Amstutz had treated Tandy over several years and: (1) had diagnosed depressive disorder, ADHD, and anxiety; (2) documented subjective complaints of poor home management and increased difficulty functioning due to depression; and (3) noted that Tandy suffered from fatigue, tiredness, and depression. *Id.*

In addition, the ALJ observed that Dr. Atkin testified at the hearing concerning Tandy's treatment notes, and acknowledged that they document "depressed mood, sleep disturbances, decrease of energy, psychomotor retardation, change in weight, and fear of going out in public[,]" as well as Dr. Amstutz's occasional mention of "apprehensive expectations and autonomic hyperactivity." *Id.* But, the ALJ noted, Dr. Atkins testified that Tandy's "primary sign or symptom of anxiety is fear of going out in public." *Id.*

After making these general observations, the ALJ set forth five principal reasons for affording Dr. Amstutz's opinion "limited weight[.]" *AR 24.* First, the ALJ noted, Dr. Amstutz's "opinions are inconsistent with the well-controlled depression, ADHD and anxiety he indicated [in his treatment notes at *AR 395-438, 464-520*] and his opinions are

-18-

inconsistent with the insignificant objective findings and observations he noted in his treatment notes[.]" *Id.* In this regard, the ALJ observed that "there are no well-documented symptoms and signs that would support such an overly restrictive mental residual functional capacity he indicated [in the Mental Impairment Questionnaire [at *AR 594-98*, described above]." *Id.*

Second, the ALJ noted that Tandy "did not see Dr. Amstutz as frequently as one would [ ] expect[ ], given her alleged significantly debilitating limitations and Dr. Amstutz's overly restrictive assessment of [Tandy's] mental functioning. [Tandy] was seeing Dr. Amstutz only every three or four months." *Id.*

Third, the ALJ observed that Dr. Amstutz appeared to base his opinion primarily upon Tandy's "self-report, which [has] not been corroborated by his own observation or of other physicians [Tandy] saw at different times. None of [Tandy's] other physicians made observation[s] that would support such overly restrictive limitations Dr. Amstutz indicated." *Id.*

Fourth, the ALJ opined that if Tandy truly had the limited

functional capacity that Dr. Amstutz noted, she would not have had full custody of her children. *Id.* And, although acknowledging that Tandy receives help "in managing her home, finances, children, medications, etc., ... the record fails to show that [Tandy] would frequently go to Dr. Amstutz's office with her mother . . . show[ing] that [Tandy] is generally independent and has the ability to communicate to her doctors as well as pass the information and instructions from the doctor to her mother." *AR 24-25.*

And fifth, the ALJ noted that Tandy's daily activities were inconsistent with Dr. Amstutz's opinion that she has marked limitations in activities of daily living, concentration, persistence, and pace. *AR 25.* He noted that Tandy's ability "to drive outside, attend her children's school function appointments, shop, and communicate with her physicians and relatives confirm[s] that [Tandy] cannot have extreme limitations in social functioning." *Id.* In sum, the ALJ concluded that Dr. Amstutz's opinion "is not [an] accurate reflection of [Tandy's] mental limitations" and that "in his role as treating physician he appears to have advocated on his client's behalf, rather than

rendered an objective assessment of medical evidence." *Id.* And, the ALJ noted, Dr. Amstutz's "statements are suggestive of his sympathy and advocacy to his client." *Id.*

Having reviewed the record, the Court concludes that the ALJ, in rejecting Dr. Amstutz's opinion, failed to provide the requisite "'specific and legitimate reasons' supported by substantial evidence in the record" in accordance with Ninth Circuit authority. *Molina*, 674 F.3d at 1111. First, in this Court's opinion, the ALJ oversimplifies Dr. Amstutz's opinion concerning Tandy's limitations imposed by her mental conditions. Respecting the ALJ's conclusions that Dr. Amstutz's opinion was: (1) inconsistent with Tandy's treatment notes; (2) improperly based on Tandy's self-reported and subjective complaints; and (3) and motivated primarily by his sympathy for Tandy, the Court is not persuaded.

Although the ALJ seizes on language in the treatment records indicating that Tandy was "doing well," and that her "medications were effective," *AR 24*, the Court concludes that the ALJ placed undue emphasis on such language, took it out of the context of the treatment

notes as a whole, and did not reconcile it with Dr. Amstutz's letters and the Mental Impairment Questionnaire he completed. For instance, Dr. Amstutz's treatment notes consistently document Tandy's major depressive disorder, ADHD, anxiety, and trial attempts with various medications often changed or discontinued because of the side effects they caused. *AR 395-438, 464-520.* And, in treatment notes spanning several years, Dr. Amstutz documented, for example, Tandy's complaints, and his own observations, of her fatigue, tiredness, depression, anxiety, apathy, ADHD, lack of motivation, weight gain, difficulty concentrating on getting "her life going[,]" and having difficulty getting up and getting going in the morning such that her children were late for school and the truancy staff got involved. *AR 395-438 and 464-520.*

Considering Dr. Amstutz's rather extensive course of treatment and care of Tandy over a period of more than 15 years in which he observed and documented the constellation of symptoms and mental disorders listed above, it was error for the ALJ to afford Dr. Amstutz's opinion "limited weight" for the reasons he provided. *See* 20 C.F.R. §

404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"). This is particularly true when the ALJ's conclusions are viewed in light of Dr. Amstutz's August 12, 2014 letter considered by the Appeals Council. In it, as noted above, he stated that his treatment of Tandy spanned a period of 17 years. When he first started treating her in 1997, he noted, she already had "significant difficulties related to anxiety, depression, and probably PTSD ... [and] was having significant anxiety symptoms with sweating, headaches, feelings of tension, panic, difficulty in crowds and large groups." *AR 612*. Although he acknowledged trying "multiple medications to attempt to stabilize her" and conceding that some of those medications gave "her some comfort[,]" he emphasized that they "have not reduced her symptoms to the point that [he] would see her in any way capable of holding a regular and steady employment." *AR 612-13*.

And, further acknowledging that Tandy had attempted working various jobs over the years, he noted that such attempts were largely

unsuccessful. Dr. Amstutz pointed out that Tandy's mental limitations are further complicated by her physical symptoms documented in the medical records and that "physical symptoms and illness cannot be separated from her mental illness in terms of adding to her disability and difficulty functioning in a work setting." *AR 613*.

Dr. Amstutz also noted that he believes that Tandy would work if she could, that he sees no evidence of malingering or purposely attempting to avoid work, and that having treated Tandy for 17 years, he has empathy for her condition and the impairments it imposes upon her. But, he emphasized, he hopes that despite his empathy for her situation, he remains objective in his assessment. *Id*.

In addition to the August 12, 2014 letter submitted after the ALJ's decision, as noted above, Dr. Amstutz stated in his June 9, 2009 letter that Tandy suffered from "severe and chronic . . . anxiety and depression" that rendered her "unable to work regularly." *AR 347*. That opinion is certainly consistent with Dr. Amstutz's more recent opinion. Similarly, Dr. Amstutz's responses to the Mental Impairment Questionnaire dated April 30, 2013, discussed above, in which he rated

Tandy's abilities to perform most work activities as "unable to meet competitive standards[,]" *AR 594-98*, also is consistent with his assessments over the course of his 17 years of treating Tandy.

Dr. Amstutz's treatment notes and the letters described above, when read as a whole, indicate to the Court that Dr. Amstutz based his opinions on years of examining and treating Tandy. Thus, the ALJ's observations that Dr. Amstutz "appears to have advocated on his client's behalf, rather than rendered an objective assessment of medical evidence" and simply made "statements . . . suggestive of his sympathy and advocacy to his client" are based on an inaccurate and incomplete reading of the record.

Second, as noted, the ALJ gave Dr. Amstutz's opinion only limited weight because Tandy did not see him more frequently than every three or four months. *AR 18.* Again, the Court concludes that this reason for not giving Dr. Amstutz's opinion greater weight is neither specific nor legitimate. The ALJ's observation ignores the fact that Dr. Amstutz treated Tandy for 17 years. It is reasonable to conclude from the longevity of that psychiatric treatment relationship that Dr.

Amstutz was in the best possible position to determine the necessary frequency of Tandy's visits with him. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Third, respecting the ALJ's position that Tandy would not have full custody of her children if she had a functional capacity as limited as Dr. Amstutz noted, the Court is not persuaded. The record contains evidence that Tandy receives a good deal of help from her parents – particularly from her mother – in managing her children and her household. *See, e.g., AR 58-59, 63.* The ALJ even acknowledged that Tandy receives help "in managing her home, finances, children, medications, etc." *AR 24-25.* That her mother does not always accompany Tandy to her medical appointments, as the ALJ noted, is not alone conclusive respecting Tandy's functional capacity, nor is it alone a sufficient basis to reject Dr. Amstutz's opinion.

Finally, the Court concludes that the ALJ misconstrued and oversimplified the evidence of Tandy's activities of daily living in

concluding that they were inconsistent with Dr. Amstutz's opinion that she has marked limitations in her activities of daily living, concentration, persistence, and pace. For example, the ALJ noted that Tandy has the ability to drive and attend her children's school functions. *AR 25.* Although the record reflects that she testified that she drives her children to school, it is only a block from her house, and she drives that block only because the school is on the other side of a highway from her house. *AR 60.* And, she also testified that she never shops for groceries during the day because she tries to go to the store when no one is there, and she typically goes with her mother. *AR 63.* Also, Dr. Amstutz's treatment notes indicate that Tandy represented to him that "she can barely go out in public, [she is] unable to meet strangers[,] [she] [h]as a difficult time making phone calls, and then, if she does, it is hard to talk intelligibly." *AR 609.*

Dr. Amstutz's psychiatric treatment notes over the lengthy 17-year period of time and the detailed Mental Impairment Questionnaire that he completed, together with the force of tone he employed in his letters, emphasize to the Court that Dr. Amstutz carries the status of a

treating physician "employed to cure and [who] has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (explaining rationale for giving greater weight to a treating physician's opinion). Dr. Amstutz's opinion, under the circumstances of this case, is entitled to great weight. *See, e.g., Tully v. Colvin*, 943 F.Supp.2d 1157, 1169 (E.D. Wash. 2013) (holding it was error for ALJ to reject treating physician's opinion because it conflicted with nonexamining physicians' opinions). The ALJ erred in failing to adequately explain his rationale for rejecting it.

The Court is mindful that other physicians, particularly the state agency non-examining physicians, rendered opinions in this case that more readily support the ALJ's decision. Neither the ALJ nor the Court, however, is permitted to view those opinions in a vacuum without proper consideration of Dr. Amstutz's opinion. No other physician treated Tandy for her mental conditions with either the frequency or for the duration of time that Dr. Amstutz did. For the reasons already stated, the ALJ was not permitted to relegate Dr.

Amstutz's opinion to a position of less importance than those of the other physicians, particularly in light of his longstanding familiarity with Tandy's mental health issues and the limitations they impose. Nor can the ALJ's personal observations of Tandy constitute substantial evidence for rejecting the opinion of Dr. Amstutz, who found Tandy mentally impaired. *See Taylor v. Commissioner of Soc. Sec.,* 659 F.3d 1228, 1235 (9th Cir. 2011).

Finally, although Tandy did not raise the issue as an allegation of error, the Court notes that her constellation of impairments – both mental and physical – when considered in combination, lend further support to the conclusion that she is precluded from performing substantial gainful activity. "When a claimant suffers from multiple impairments, the Commissioner must consider their combined effect in determining whether the claimant is disabled." *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (*citing Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)). The Commissioner must also "adequately explain his evaluation of . . . the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the ALJ found that Tandy suffers from severe impairments, in addition to her mental health issues, including myofascial pain syndrome, mild right shoulder arthritis, and obstructive sleep apnea. *AR 13.* The record contains medical evidence, collaborated by Tandy's testimony, that indicates that these conditions cause her pain and discomfort. The pain and discomfort may not, in and of themselves, render her disabled. But when symptoms arising from those conditions are coupled with Tandy's symptoms stemming from her mental health conditions, the combination lends support to the conclusion that Tandy is disabled.

In summary, upon review of the record, the Court finds that the record does not support the ALJ's rejection of Dr. Amstutz's opinion. Thus, the ALJ erred. Because the record is adequate to support Tandy's claim for benefits, the Court sees no need to address her other allegations of error.

**B.** **Whether to Remand for Further Proceedings or for an Award of Benefits**

Whether to remand for further proceedings or for an immediate award of benefits is within the Court's discretion. *Treichler v.*

*Commissioner of Social Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

Remand for an award of benefits is appropriate if: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). And, the Court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole

creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, in light of the foregoing discussion, the Court concludes that no useful purpose would be served by further administrative proceedings. The record is fully developed. And, as noted, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of treating physician Dr. Amstutz. Finally, it is clear to this Court that the ALJ would be required to find Tandy disabled if the improperly rejected evidence discussed above were properly credited.

## VII.  <u>CONCLUSION</u>

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision denying DIB and SSI is REVERSED and this matter is REMANDED to the Commissioner for an award of benefits.

The Clerk of Court shall enter Judgment accordingly.

DATED this 30th day of September, 2015.


<u>/S/ Carolyn S. Ostby</u>
United States Magistrate Judge